SCOTT ANDREWS *v.* COMMISSIONER OF
CORRECTION
(AC 15526)

Foti, Lavery and Landau, Js.

---

[4] Because of our disposition of the plaintiff's first claim, we do not reach the remaining issues.

Argued February 20—officially released May 20, 1997

*Deborah DelPrete Sullivan*, assistant public defender, for the appellant (petitioner).

*Paul J. Ferencek*, assistant state's attorney, with whom, on the brief, were *Patricia A. Swords*, state's attorney, and *John Dropick*, assistant state's attorney, for the appellee (respondent).

### Opinion

LANDAU, J. The petitioner appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly (1) denied his motion for articulation and (2) dismissed his claim of ineffective assistance of counsel. We affirm the judgment of the trial court.

The facts pertinent to this appeal are fully set forth in *State* v. *Andrews*, 29 Conn. App. 533, 535–36, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993). "On October 23, 1989, the victim, Wendell Pickney, together with three other youths left Weaver High School in Hartford in a red Jeep driven by Antwane Williams-Bey. They drove to Bloomfield High School to

visit with some female students. A second car, a blue Oldsmobile, driven by a youth called Tiger, with Trevor Cumberbatch as a passenger, accompanied them to Bloomfield.

"When they returned to Hartford on Blue Hills Avenue, one of the passengers in the red Jeep, Kevin Waite, observed a green Datsun with three people inside make a right turn off Harold Street. Waite observed that Kendall Crowe was driving the Datsun, Uracca Lindsay was in the front passenger seat and the [petitioner], Scott Tyrone Andrews, occupied the rear seat. These three individuals lived in a neighborhood different from that of the victim and his friends. The residents of these two neighborhoods had previously exhibited ill will toward each other.

"Waite observed Lindsay point a gun out of the front passenger window of the Datsun, but Lindsay did not fire a shot at that time. The Datsun continued to follow the Jeep until it reached Mt. Sinai Hospital. It turned abruptly into the hospital and then exited onto Manchester Street. The Jeep and the blue Oldsmobile both made U-turns on Blue Hills Avenue. When the Datsun emerged from Manchester Street onto Blue Hills Avenue, it was travelling in the opposite direction from the Jeep and the Oldsmobile.

"As the Datsun passed the Jeep, Waite observed the [petitioner], seated in the back seat of the Datsun, point a gun with a black barrel and a brown stock out of the car window and fire at the Jeep. Other witnesses also identified the [petitioner] as the person who shot at the Jeep from the window of the Datsun. Waite ducked when he heard the shot, felt blood drip onto his head and then saw that blood was pouring down heavily from the victim's neck. The operator of the Jeep immediately pulled into the emergency entrance of Mt. Sinai Hospital seeking medical attention for the victim.

"Emergency medical personnel responded and observed the victim slumped over in the back seat of the vehicle, bleeding profusely from a wound behind his left ear. The victim appeared not to be breathing, although a nurse from the emergency department of Mt. Sinai Hospital was able to detect a carotid pulse. Hospital personnel removed the victim from the Jeep and brought him into the emergency room where they attempted unsuccessfully to resuscitate him. The victim died from a gunshot wound to the left side of his neck."

After a jury trial, the petitioner was convicted of manslaughter in the first degree. This court affirmed the judgment of conviction on appeal, and the Supreme Court denied certification. The petitioner sought habeas corpus relief, and, following an evidentiary hearing, the habeas court dismissed the petition and subsequently granted the petitioner permission to appeal.

I

The petitioner first claims that the habeas court improperly denied his motion for articulation. He argues that the habeas court failed to comply with the mandates of Practice Book § 4059 by failing to address, in its memorandum of decision, his claim of ineffective assistance of counsel. He filed a motion for articulation on January 29, 1996. On March 13, 1996, after the habeas court denied the petitioner's motion for articulation, he filed a motion for review in this court. We granted the petitioner's motion for review but denied the relief requested therein.

While it might be reasonably argued that in *State* v. *Holloway*, 22 Conn. App. 265, 577 A.2d 1064, cert. denied, 215 Conn. 819, 576 A.2d 547 (1990), we merely discouraged an attempt by a litigant to brief a matter on the merits when he was disappointed with a ruling on a motion to review; see W. Horton & S. Cormier, Rules of Appellate Procedure (1997 Ed.) § 4053, com-

ment 9; in *Santoro* v. *Santoro*, 33 Conn. App. 839, 842, 639 A.2d 1044 (1994), we closed the door on this practice. In *Santoro*, we concluded that if we permitted the petitioner to raise this issue again in his appeal, we would " 'be providing two appellate reviews of the same issue.' " Id. Thus, we will not review this claim.[1]

## II

The petitioner next claims that the habeas court improperly dismissed his claim of ineffective assistance of counsel. The petitioner claimed before the habeas court that he was rendered ineffective assistance of counsel due to his trial counsel's failure to interview or to attempt to interview the codefendants and witnesses to the incident and another witness, Andre Crowe, and his failure to investigate the firearms examination report. We address these claims in turn.

The standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice." *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 445, 610 A.2d 598 (1992). "Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Id., quoting *Strickland* v. *Washington*, supra, 694. "In this context, a reasonable probability that, but for counsel's unprofessional errors,

---

[1] We decline the petitioner's invitation to order the habeas court to articulate its decision pursuant to our supervisory powers. See Practice Book § 4183.

the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case. . . . Rather, it merely requires the prisoner to establish a probability sufficient to undermine confidence in the outcome." (Citations omitted; internal quotation marks omitted.) *Bunkley* v. *Commissioner of Correction*, supra, 445–46.

The petitioner contends that the habeas court improperly denied his petition solely on the basis that he had not satisfied the prejudice requirement of the *Strickland* test. A court, however, need not determine the deficiency of counsel's performance if consideration of the prejudice requirement will be dispositive of the ineffectiveness claim. See *Harris* v. *Commissioner of Correction*, 40 Conn. App. 250, 256, 671 A.2d 359 (1996); *Pelletier* v. *Warden*, 32 Conn. App. 38, 46, 627 A.2d 1363, cert. denied, 227 Conn. 920, 632 A.2d 694 (1993).

With regard to trial counsel's failure to procure the testimony of the codefendants, Lindsay and Kendall Crowe, the habeas court correctly reasoned that the petitioner presented insufficient proof of prejudice. The petitioner did not call the codefendants at the habeas hearing or otherwise present evidence to establish that their testimony at trial would be favorable to him.[2]

With regard to trial counsel's failure to call Andre Crowe, Kendall Crowe's brother, as a witness, the habeas court correctly concluded, after reviewing Andre Crowe's statements given to the police after the shooting and the petitioner's failure to call Andre Crowe at the habeas hearing, that the petitioner failed to prove prejudice. The habeas court further concluded that the

---

[2] No evidence was adduced at the habeas hearing regarding the availability or willingness of these persons to be interviewed.

beneficial impact of his prospective testimony remains unproven.

Finally, trial counsel's failure to call Robert Hathaway, a former state police officer who had conducted a firearms examination of the caliber of the bullet that killed the victim, or otherwise to present the findings of the firearms examination report did not prejudice the petitioner. The habeas court properly concluded that, because the victim's companions in the Jeep and the Oldsmobile testified at trial that they could not identify the particular type of firearm used by the petitioner, the caliber of the bullet played no significant part in the case.

The petitioner has failed to establish " 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bunkley* v. *Commissioner of Correction*, supra, 222 Conn. 445, quoting *Strickland* v. *Washington*, supra, 466 U.S. 694. Thus, we conclude that the habeas court properly found that the petitioner was not deprived of his constitutionally mandated right to effective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.